### MARLOW v. CONWAY IRON WORKS
#### (125 S. E., 569)

1. Bailment—Rule Stated as to Relation Between Owner of Cotton and Ginner, in Absence of Special Contract.—In absence of special contract, the relation between plaintiff who had left cotton with defendant to be ginned was that of bailor and bailee under an ordinary bailment for hire, or bailment for mutual benefit.

2. Bailment—Bailor Bound by Special Terms Stipulated by Bailee if Not Violative of Law or Public Policy.—If bailee gives bailor notice of special terms and the means of knowing what they are, and bailor chooses to make bailment, he is bound by such terms, provided they are not in violation of law or of public policy, and do not protect bailee in case of fraud or negligence.

3. Bailment—Special Contract Strictly Construed.—Special contract affecting relation of bailor and bailee must be strictly construed.

4. Bailment—Stipulation Held Not to Reduce Ginner's Liability Below that of Gratuitous Bailee.—Ginner's stipulation against responsibility "for cotton outside of the ginhouse" did not reduce ginner's liability below that of a gratuitous bailee.

5. Bailment—Misdelivery, Whether Intentional or Not, Constitutes Wrongful Conversion Making Bailee Liable Irrespective of Negligence.—Misdelivery, constituting affirmative act or course of conduct on part of bailee resulting in transfer of bailed property without authority from bailor to third person, whether intentional or not, is wrongful conversion, making bailee liable irrespective of negligence.

6. BAILMENT—GRATUITOUS BAILEE LIABLE FOR MISDELIVERY.—Bailee is not relieved from liability for misdelivery by reason of fact that bailment is gratuitous.

7. BAILMENT—GINNER BEING SUED FOR COTTON WAS REQUIRED TO ACCOUNT FOR LOSS.—In owner's action against ginner for cotton, ginner was required to account for the loss and to show manner thereof.

8. BAILMENT—GINNER'S OWN EVIDENCE HELD TO SHOW MISDELIVERY AUTHORIZING DIRECTION OF VERDICT FOR OWNER OF COTTON.—In owner's action against ginner for loss of cotton, ginner's own evidence *held* to show misdelivery, warranting direction of verdict for owner regardless of whether action be considered one on contract or in tort.

9. APPEAL AND ERROR—EXCLUSION OF EVIDENCE HELD HARMLESS, IN VIEW OF APPELLATE COURT'S CONSIDERATION OF FACTS ESTABLISHED THEREBY.—Exclusion of evidence *held* harmless, where Appellate Court in affirming Judgment gave appellant full benefit of facts which would have been established thereby.

10. BAILMENT—DUE CARE IN HANDLING OF COTTON BY GINNER HELD NOT PLEADED.—Ginner's allegation in answer that "it had completed its whole duty to the plaintiff when the process of ginning was completed," *held* insufficient pleading of due care in handling of cotton.

11. APPEAL AND ERROR—ERRONEOUS CONSTRUCTION OF ANSWER IN RULING ON MOTION FOR DIRECTED VERDICT HARMLESS, WHERE SUPREME COURT SUSTAINED RULING ON OTHER GROUNDS.—Court's erroneous construction of answer in passing on motion for directed verdict held harmless, where Supreme Court sustained ruling on motion for directed verdict on other grounds under Rules Supreme Court, No. 5, § 9.

12. APPEAL AND ERROR—EXCEPTIONS ABANDONED BY COUNSEL IN ORAL ARGUMENT NOT CONSIDERED.—Exceptions abandoned by counsel in oral argument before Supreme Court will not be considered.

Before TOWNSEND, J., Horry, March, 1923.    Affirmed.

Action by H. L. Marlow against the Conway Iron Works. Judgment for plaintiff, and defendant appeals.

*Messrs. Sherwood & McMillan,* for appellant, cite: *Wrongful conversion:* 1 C. J., 1056–8. *Single cause of action:* 27 S. E., 551. *Relation of other alleged delicts in the statement of a cause of action:* 26 S. E., 981; 51 S. E., 694–5; 2 Rich. Eq., 287. *Closing of the contract:* 3 Strob., 367. *Actionable negligence:* 24 L. R. A. (N .S.), 121. *If*

*time had been in contract—defendants care:* 2 Brev., 348; 4 McC., 220; 108 S. C., 92. *Proof of custom:* 19 S. C., 30. *Proof of notice limiting liability:* 109 S. C., 397.

*Messrs. Robert B. Scarborough* and *Cordie Page,* for respondent, cites: *Agency:* 113 S. C., 499; 114 S. C., 488; 105 S. C., 487; 112 S. C., 109; 2 Mill, Const., 251; 104 S. C., 152. *Burden is on the defendant to show ordinary care:* 108 S. C., 96; 76 S. C., 237; 108 S. C., 66. *Custom and usages must be pleaded:* 27 R. C. L., 195, Sec. 40; 296 Fed., 146. *Immaterial and irrelevant acts:* 116 S. C., 221. *Unambiguous contract:* 114 S. C., 370. *Usage:* Riley, 296. *No error in admission of:* 81 S. C., 432; 79 S. C., 281; 106 S. C., 50; 44 S. C., 227. *Evidence of due care not admissible unless pleaded;* 21 R. C. L., 569, Sec. 125.

December 4, 1924.

The opinion of the Court was delivered by Mr. Justice Marion.

This is an action to recover the value of a bale of cotton which plaintiff alleges he delivered to the defendant in the form of "long staple seed cotton, to be ginned and baled and returned" to him, and which defendant failed and refused upon demand and after payment of ginning charges to return or redeliver to the plaintiff. Plaintiff further alleges that the defendant disposed of and converted the cotton. The defendant, by its answer, enters a general denial, and set up the following additional defenses:

"That, if the plaintiff had the cotton described in his complaint ginned at this defendant's gin, this defendant alleges that it completed its whole duty to the plaintiff when the process of ginning was completed; and that it is and was in no way responsible for the safekeeping, safestoring, or warehousing of the said cotton, and, if the plaintiff in fact lost one bale of cotton as alleged in his complaint, it was due, caused, and occasioned by his, the said plaintiff's own negligence and carelessness, and after notice to him the said plain-

tiff and the public that this defendant assumed no responsibility for cotton left on its premises."

Upon all of the evidence adduced at the trial of the issues thus joined the Circuit Court directed a verdict for the plaintiff for the value—to be ascertained and fixed by the jury—of the bale of cotton in question. From judgment on the verdict rendered the defendant appeals.

The substantial question raised by the appeal (Exception 5) is whether the Circuit Court erred in sustaining plaintiff's motion for a directed verdict. The facts of the case pertinent to a determination of that question, which we think the record warrants us in accepting either as undisputed or as established by the evidence to the exclusion of any other reasonable inference, are as follows:

In October, 1918, J. W. Marlow, living at Burgess, Horry County, shipped by way of the "Waccamaw Line" of steamers, to the defendant at Conway, two bales of long staple seed cotton to be ginned and baled. One of these bales was the property of the plaintiff, H. L. Marlow. The cotton was received and ginned by the defendant. Neither the plaintiff nor his agent, J. W. Marlow, was present when the cotton was received and ginned. After the cotton was ginned and packed, it was placed by defendant on a platform outside of its ginhouse. While the cotton was being ginned, the drayman of one Percy Hardwicks, a local cotton buyer, came to Dozier, the manager of the ginnery, and "asked for H. L. and J. W. Marlow's cotton." In response to this request, Dozier, the manager, said: "H. L. Marlow's bale is just outside of the house, the other is not ginned yet." The defendant had no instructions or other express authority to deliver the plaintiff's cotton to Hardwick or his drayman. About a week after the cotton was ginned J. W. Marlowe saw Dozier, the manager, paid for the ginning, and demanded the baled cotton. It was not produced, and plaintiff's bale was never thereafter found or delivered to him. The bale of J. W. Marlow was found in the possession of

Percy Hardwick. The defendant had no inclosure and no arrangement for caring for cotton after it was ginned and baled except by placing it on a platform outside the ginhouse. The defendant had posted signs "on the warehouse" (ginhouse) to the effect that it was "not responsible for the cotton after it was out of the house" (ginhouse). No precautions were used to prevent cotton from being stolen. It was the custom or habit of. the defendant to permit local cotton buyers to take away the cotton placed on the platform without giving a receipt therefor and without an order from the owner of the cotton.

The Circuit Judge, on the motion to direct a verdict for the plaintiff, held as follows:

"The undisputed evidence shows that the cotton was delivered by the plaintiff's agent to the defendant for the purpose of being ginned in consideration of a certain price to be paid for such service by the plaintiff or his agent, and such price was subsequently paid, but the cotton was never delivered by the defendant to the plaintiff; and the defendant has introduced no evidence showing that· it had properly accounted for the cotton, and does not plead, as an affirmative defense, that it discharged the duty of using due care for the protection of the cotton while left in its custody. On the contrary, the only affirmative defense set up is that the loss of the cotton was due to the plaintiff's own⁓negligence and carelessness."

The most that defendant can claim under the pleadings and the evidence is that the plaintiff's cotton was delivered to it to be ginned· under a special contract of bailment whereby the defendant's liability as bailee was limited, in accordance with the terms of the notice posted on the ginhouse, and in accordance with the custom and usage of ginners in that locality, by the stipulation that the ginning company would "not be responsible for cotton outside of the ginhouse." It is not disputed that, when plaintiff's cotton was ginned and placed on defendant's platform outside the

ginhouse, it was still on the premises and in the possession and control of the defendant. It does not appear that when the cotton was so ginned and placed the plaintiff or any representative of his was present or had any knowledge of the fact that the cotton had been ginned and placed on the platform. In that situation, what is the effect upon the defendant's liability of the restriction claimed? In the absence of special contract the relation of the parties was unquestionably that of bailor and bailee under an ordinary bailment for hire, or bailment for mutual benefit. *Foster v. Taylor*, 2 Brev., 348. *McCaw v. Kimbrel*, 4 McCord, 220. If the bailee "gives the bailor notice of special terms and the means of knowing what they are; and if the bailor chooses to make the bailment, he is bound by them, provided the contract is not in violation of law or of public policy, and that it stops short of protection in case of fraud or negligence of the bailee; and provided further, that the terms of the contract are clear, such stipulations being to be strictly construed." 6 C. J., 1112, 1113, § 44. *Hanes v. Shapiro*, 168 N. C., 24; 84 S. E., 33. In the light of the foregoing principles it would seem clear that the limiting contractual stipulation here invoked may not soundly be construed in any view to reduce defendant's liability below that of a gratuitous bailee. In the Mississippi case of *Batesville Gin Co. v. Whitten*, 96 Miss., 210; 50 So., 695, it is said:

"The gin company had the following notice posted in many places in the gin, viz.: 'Notice! Not responsible for cotton left on our yard after it is baled. Batesville Gin Company.' In short, after ginning and packing, the cotton was held at the rsk of the party to whom it belonged, and all parties were so notified. Of course, even in this condition of affairs, it was the duty of the gin company not to cause loss to the party who brought the cotton there by reason of negligence," etc.

Assuming, therefore, for the purpose of this discussion, that by virtue of the posted notice and of the established

usage of the ginning trade (see as to usage *Hayward v. Middleton,* 3 McCord, 121; 15 Am. Dec., 615) the liability of the defendant was reduced to that of a gratuitous bailee, was the Circuit Judge in error in holding as a matter of law that defendant under the facts in evidence was liable to plaintiff for the value of the bale of cotton in question? That inquiry, we think, is to be resolved in the light of the following generally accepted view of the law of bailments:

"Except as to the degree of diligence and care required of him, a bailee's general obligation is the same whether he has assumed the trust without hope of recompense or upon the promise or with the expectation of reward. Accordingly, if he should deliver the property to a person not authorized to receive it, he would make himself responsible for its value without regard to the question of due care or the degree of negligence." 3 R. C. L., p. 104, § 29; page 116, §§ 38 and 39.

Misdelivery—which imports some affirmative act or course of conduct on the part of the bailee, as a result of which, without authority from the bailor, the bailed property is placed at the disposal of, or transferred to, a third person who is not the true owner—whether such misdelivery be intentional or not, is such a wrongful converson of the bailed property as will make the bailee liable, irrespective of negligence. 6 C. J. 1143, § 99. It follows that, where there is a misdelivery of the bailed property by a gratuitous bailee, he is not relieved from liability by reason of the fact that the bailment is gratuitous. *Serry v. Knepper,* 101 Iowa, 372; 70 N. W., 601. *Hubbell v. Blandy,* 87 Mich., 209; 49 N. W., 502; 24 Am. St. Rep., 154. *Jenkins v. Bacon,* 111 Mass., 373; 15 Am. Rep., 33. *Wear v. Gleason,* 32 Ark., 364; 12 S. W., 756; 20 Am. St. Rep., 186. *Murray v. Postal Tel. Co.,* 210 Mass., 188; 96 N. E., 316; Ann. Cas. 1912C, 1183. *Price v. Oswego, etc., R. Co.,* 50 N. Y., 213; 10 Am. Rep., 475.

In the case at bar the law imposed upon the defend-
7, 8 ants the obligation to account for the loss, and to
show the manner of the loss, of plaintiff's cotton.
*Fleishman v. Railway,* 76 S. C., 237, 247; 56 S. E., 974; 9
L. R. A. (N. S.), 519. The only evidence adduced by de-
fendant to account for the failure to return plaintiff's prop-
erty on demand or to explain its loss is testimony tending to
establish that immediately after plaintiff's bale of cotton had
been ginned the defendant's manager permitted the drayman
of a local cotton buyer to remove the cotton from defend-
ant's premises in accordance with defendant's habit of de-
livering or surrendering the cotton of its customers to local
cotton buyers without taking a receipt therefor and without
requiring an order from the owners of the cotton. It is
not claimed by defendant that the property was lost or de-
stroyed while on its premises. The manager of the gin
company expressly denies that he lost any cotton. There
was no fire; and there seems to be no contention on de-
fendant's part that the cotton was stolen. There is nothing
in the evidence to indicate that the defendant's habit of de-
livering cotton to local cotton buyers was known to plaintiff
or his agent, and, if there had been, it does not follow that
authority to deliver plaintiff's cotton to one not entitled to
its custody could soundly be implied merely from such a
known method of doing business. We think the only rea-
sonable inference to be drawn from the evidence as a whole
is that the defendant, without authority from the owner,
virtually placed the cotton at the disposal of the drayman
of a local cotton buyer, and that the cotton passed into the
hands of this local cotton buyer with defendant's consent
and by its permission. If so, there was a misdelivery of
the bailed property, and defendant was liable for the value
of the cotton in any view of the case. ' It is immaterial,
therefore, whether the action be considered an action on
contract or in tort. See *Farmers' Union Merc. Co. v. An-
derson,* 108 S. C., 66, 71; 93 S. E., 422. *Tindall v. Mc-*

18—S. C. R., 130

*Carthy*, 44 S. C., 487; 22 S. E., 734, and *Fleishman v. Railway, supra.* It follows that for .the reasons stated the direction of the verdict by the Circuit Court must be sustained.

Appellant's exception 3, directed to imputation of error in the exclusion of evidence tending "to show the custom and usages of defendant's ginnery and other ginneries in this section relative to ginning cotton and the disposition of the same after ginning and baling," is overruled for the reason that, in the view we have taken of the case, defendant has been given the full benefit of any testimony that could have been adduced to establish a usage or custom limiting the responsibility of the ginner for cotton after it had been ginned and baled, etc.

Exception 4 imputes error to the Circuit Judge "in holding that the defendant had not, in its answer, pleaded due care in the handling of the cotton," etc. It is contended that "defendant's answer alleging that 'it had completed its whole duty to the plaintiff when the process of ginning was completed' was susceptible of no inference other than that it had used such care as the law imposed upon it in such cases." The view of the Circuit Judge complained of was announced in passing on the plaintiff's motion for the direction of a verdict, and was stated merely as one of his reasons or grounds for granting that motion. We do not think appellant's contention as to the proper construction of the portion of the answer relied on is tenable. But, if it were, since the ruling of the Circuit Judge as to the direction of the verdict has been sustained on other grounds (Rule 5, Section 9, rules of this Court), it is immaterial whether his construction of the answer was correct or not. Obviously, there was no prejudicial error, and Exception 4 is overruled.

The remaining exceptions (1 and 2) were abandoned by counsel in their oral argument before this Court.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTCES WATTS,, FRASER and COTHRAN concur.

MR. CHIEF JUSTICE GARY did not participate.

MR. JUSTICE COTHRAN: See, also, *Robinson v. S. C. O. Co.,* 108 S. C., 92; 93 S. E., 395.